UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

Case No: 3:14-cv-30186

| | | |
|---|---|---|
| CYNTHIA LAMACCHIA, | ) | |
|     Plaintiff | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| COOLEY DICKINSON HEALTH CARE | ) | |
| CORPORATION AND COOLEY | ) | |
| DICKINSON HOSPITAL, INC., | ) | |
|     Defendants | ) | |

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

## THE PARTIES

1.    The plaintiff, Cynthia Lamacchia, is a resident of 60 North Main St, Apt. 3, Belchertown, Massachusetts, Hampshire County, Massachusetts.

2.    The defendant, Cooley Dickinson Health Care Corporation (the "Defendant" or "CDHCC"), is a Massachusetts Nonprofit Corporation with a principal place of business at 30 Locust Street, Hampshire County, Northampton, Massachusetts.

3.    The defendant, Cooley Dickinson Hospital, Inc. (the "Defendant" or "CDH") (hereinafter CDHCC and CDH are collectively referred to as "Cooley Dickinson" or the "Defendants"), is a Massachusetts Hospital with a principal place of business at 30 Locust Street, Hampshire County, Northampton, Massachusetts.

579201

## JURISDICTION AND VENUE

4.      The Court has jurisdiction pursuant to 42 U.S.C. § 12112 and 28 U.S.C. § 1331. The Court has venue because the plaintiff resides in Hampshire County and the Defendants have a principal place of business in Hampshire County.

## COMMON FACTS

5.      The Plaintiff is a certified phlebotomist and has worked in this occupation since she obtained her certification in 1992.

6.      In or around April 2012, the Plaintiff worked as a phlebotomist at University Health Services at the University of Massachusetts, a position she had held for approximately 15 years.

7.      In or around April, 2012, the Plaintiff was also working at Springfield Technical Community College ("STCC"), helping to teach phlebotomy students.

8.      In or around April, 2012, the Plaintiff was also working on Saturdays as a per diem phlebotomist at Mary Lane Hospital.

9.      The Plaintiff, who is 47 years old, was diagnosed with Charcot-Marie-Tooth Syndrome ("CMTS") when she was in her twenties.

10.     CMTS is a neuro-muscular disorder. Among the symptoms are high arches in the feet and some weakness in the feet and lower leg muscles.

11.     The Plaintiff has been able to lead a full and active life with CMTS and has made her own accommodations by wearing orthotics in both of her shoes, exercising regularly to maintain muscle tone, and taking other precautionary measures.

12.     In or around April 2012, Cooley Dickinson posted an open position for Laboratory Supervisor, Hospital Patient and Client Services ("Laboratory Supervisor Position" or "the Position").

13.     The main function of the Position was to be "responsible for supervising and directing the Laboratory Specimen Receiving area, Nursing Home and Home Visit Services, and hospital based Phlebotomy Services."

14.     Upon information and belief and upon review of the "Position Description," the Laboratory Supervisor position would have been less physically demanding than the phlebotomy positions the Plaintiff was holding.

15.     The Plaintiff's supervisor at STCC brought the Position to The Plaintiff's attention and encouraged her to apply for it.

16.     The Plaintiff applied for the Position, and on or around April 16, 2012, employees of Cooley Dickinson interviewed the Plaintiff for the position.

17.     In attendance at the interview were 5 or 6 laboratory supervisors, including the woman whose position the Plaintiff hoped to fill.

18.     On or around April 16, 2012, Cooley Dickinson extended to the Plaintiff a written offer of employment for the Laboratory Supervisor position.

19.     The position was a full-time position and the annual salary was $69,500.

20.     Cooley Dickinson informed the Plaintiff she would start her new job on May 2, 2012.

21.     The offer of employment was contingent on "the results of professional/business references, degree verification, a criminal background check, a sanction provider check, a pre-placement physical and drug screening."

22.     The Plaintiff accepted the employment offer.

23.     On or around April 16, 2012, Cooley Dickinson also provided the Plaintiff with new hire paperwork to complete and informed her that her employee health appointment was scheduled for April 30, 2012 at 9:00 AM.

24.     On or around April 15, 2012, Cooley Dickinson also informed the Plaintiff that she was required to attend an all-day, hospital-wide orientation on May 7, 2012.

25.     The Plaintiff gave notice to her employer, University Health Services, of her new position.

26.     The Plaintiff completed her new hire paperwork, including a Pre-placement Examination Medical History ("Medical History").

27.     On her Medical History, the Plaintiff indicated that she has a "Neuro-muscular disorder (Charcot-Marie-Tooth Syndrome)" and also provided specific examples of her CMTS symptoms, including the fact that she has no distal reflexes, walks with a wide gait, and that her balance can be "off" when she is fatigued or in low light areas.

28.     On or around April 30, 2012, the Plaintiff provided Cooley Dickinson with all of her new hire Paperwork, including her Pre-Placement Examination Medical History, and underwent the pre-placement physical and drug screening.

29.     Linda Goodman, a nurse practitioner, conducted the Plaintiff's pre-placement physical and, upon information and belief, had the Plaintiff's Pre-Placement Examination Medical History with her during the pre-placement physical.

30.     On or around April 30, 2012, during her pre-placement physical, the Plaintiff was asked to perform the physical portion of her examination barefoot.  The Plaintiff recalls that she

needed to place her hand on a piece of furniture while she was demonstrating certain abilities including moving into a squatting position.

31.     Because the Plaintiff was barefoot during her pre-placement physical, she did not have the benefit of the orthotics that she wears in her shoes to assist her with her balance.

32.     The Plaintiff believed the pre-placement physical went well.

33.     On or around May 1, 2012, the Plaintiff received a call from a Cooley Dickinson Human Resources representative who advised her that her toxicology screen was fine, but she did not pass the pre-placement physical and, as a result, Cooley Dickinson was rescinding its offer of employment.

34.     The Plaintiff asked for details about the pre-placement physical results, but was told that because of HIPAA, someone from the medical staff would have to call her the next day.

35.     On or around May 2, 2012, at approximately 10:00 a.m., Ms. Lamacchia received a telephone call from two individuals—an unknown Cooley Dickinson Human Resources representative and Linda Goodman.

36.     During the ensuing conversation, the Plaintiff was told that she failed her pre-placement physical because she could not do certain things that were required in the job description, such as standing, reaching, and lifting 1/3 of the time.

37.     The Plaintiff informed the Human Resources representative and Ms. Goodman that she had been working for more than twenty years doing all those things on a regular basis without a problem.  The Plaintiff then asked them for specific examples of the things they believed she was unable to do, but they were either unable or unwilling to provide her with any specifics.

38.     The Human Resources representative and Ms. Goodman advised the Plaintiff that the decision to rescind the offer of employment had been made by the Medical Director and that the decision was final.

39.     At no time during this telephone discussion, or any other conversation with anyone from Cooley Dickinson, was the Plaintiff asked whether she needed any accommodations to complete her pre-placement physical or perform the essential functions of the job.

40.     On or around May 10, 2012, the Plaintiff received by email a letter from Kerry Damon, Director of Recruitment, Labor & Employee Relations, formally rescinding the offer of employment that Cooley Dickinson extended to her on April 16, 2012.

41.     Upon information and belief, Cooley Dickinson rescinded its offer of employment to the Plaintiff because of its belief that she (1) was on pain medication that she would need to take during her work, (2) is not able to stand up well, (3) would not be able to adequately move throughout the hospital, and (4) would not be able to lift a patient who fainted during a blood draw.  These reasons are based on misinformation and stereotypes, and not on the Plaintiff's actual condition.

42.     The only pain medication the Plaintiff takes is Ibuprofen, which she takes only occasionally for shoulder pain.

43.     The Plaintiff is able to walk distances and up and down stairs, stand on her feet for large parts of her day, and in 20 years as a phlebotomist, has never had difficulty responding to a patient in distress during a blood draw.

44.     Upon information and belief, the Laboratory Supervisor position that was offered to the Plaintiff, and then later rescinded, was less physically demanding than the phlebotomy positions she has held for 20 years.

579201

45.     University Health Services agreed to re-hire the Plaintiff after Cooley Dickinson rescinded its offer of employment.

46.     The Plaintiff makes considerably less money in her position at University Health Services than what she would have made in the Laboratory Supervisor position at Cooley Dickinson.

47.     As a result of this experience with Cooley Dickinson, the Plaintiff's self-esteem and self-image have suffered significantly, and she has suffered emotional distress.

48.     The Plaintiff filed a Charge of Discrimination within the statutory time period set forth in M.G.L. c. 151B with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC"). The MCAD issued a finding of Probable Cause on July 31, 2013.  The Plaintiff advised the MCAD of her intent to withdraw her Charge on June 19, 2014.

49.     The Plaintiff was issued a Notice of Right to Sue by the EEOC on or about July 25, 2014. (Exhibit 1).

## COUNT I
**Failure to Hire Based on Plaintiff Being Regarded as Having a Disability in Violation of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq*.**

50.     The Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 49 of her complaint and incorporates them herein by reference.

51.     The Plaintiff's Medical History and her pre-placement physical revealed her diagnosis of CMST and her physical symptoms.

52.     The Defendants rescinded the Plaintiff's offer of employment because they regarded her CMST as a disability.

579201

53.     The Defendants violated 42 U.S.C. § 12112 by rescinding the plaintiff's offer of employment based on their perception that she was disabled.

54.     As a result of the Defendants' conduct, the Plaintiff has been damaged.

WHEREFORE, the Plaintiff hereby demands such legal or equitable relief appropriate to effectuate the purposes of the Americans with Disabilities Act including without limitation, back pay, front pay, emotional distress, loss of benefits, attorneys' fees and other consequential damages and multiple damages.

### COUNT II
**Failure to Hire Based on Plaintiff being Regarded as Having a Disability in Violation of Massachusetts Handicap Discrimination Laws, M.G.L. c. 151B, § 4(16)**

55.     The Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 54 of her complaint and incorporates them herein by reference.

56.     The Plaintiff's Medical History and her pre-placement physical revealed her diagnosis of CMST and her physical symptoms.

57.     The Defendants rescinded the Plaintiff's offer of employment because they regarded her CMST as a disability.

58.     The Defendants violated M.G.L. c. 151B § 4(16) by rescinding the plaintiff's offer of employment based on their perception that she was disabled.

59.     As a result of the Defendants' conduct, the Plaintiff has been damaged.

WHEREFORE, the Plaintiff hereby demands such legal or equitable relief appropriate to effectuate the purposes of the Massachusetts Handicap Discrimination Law including without limitation, back pay, front pay, emotional distress, loss of benefits, attorneys' fees, punitive damages and other consequential damages.

## COUNT III
### Failure to Hire Based on a Record of Disability in Violation of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq*.

60.     The Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 59 of her complaint and incorporates them herein by reference.

61.     The Plaintiff's Medical History documented her diagnosis of CMST.

62.     The Plaintiff's Medical History is a record of her handicap.

63.     The Plaintiff's Medical History was provided to the Defendants and the Plaintiff informed the Defendants of her diagnosis and symptoms.

64.     The Defendants violated 42 U.S.C. § 12112 by rescinding the plaintiff's offer of employment based on the record of her disability.

65.     As a result of the Defendants' conduct, the Plaintiff has been damaged.

WHEREFORE, the Plaintiff hereby demands such legal or equitable relief appropriate to effectuate the purposes of the Americans with Disabilities Act including without limitation, back pay, front pay, emotional distress, loss of benefits, attorneys' fees and other consequential damages and multiple damages.

## COUNT IV
### Failure to Hire Based on a Record of Disability in Violation of Massachusetts Handicap Discrimination Laws, M.G.L. c. 151B, § 4(16)

66.     The Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 65 of her complaint and incorporates them herein by reference.

67.     The Plaintiff's Medical History documented her diagnosis of CMST.

68.     The Plaintiff's Medical History is a record of her handicap.

69.     The Plaintiff's Medical History was provided to the Defendants and the Plaintiff informed the Defendants of her diagnosis and symptoms.

70.     The Defendant violated M.G.L. c. 151B § 4(16) by rescinding the plaintiff's offer of employment based on the record of her disability.

71.     As a result of the Defendants' conduct, the Plaintiff has been damaged.

WHEREFORE, the Plaintiff hereby demands such legal or equitable relief appropriate to effectuate the purposes of the Massachusetts Handicap Discrimination Law including without limitation, back pay, front pay, emotional distress, loss of benefits, attorneys' fees and other consequential damages and multiple damages.

## <u>COUNT V</u>
**Failure to Hire Based on a Disability in Violation of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.***

72.     The Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 71 of her complaint and incorporates them herein by reference.

73.     The Plaintiff is a handicapped person because CMST substantially limits her major life activities of standing, walking, and balancing.

74.     The Plaintiff is a qualified handicapped person because she is capable of performing the essential functions of a Laboratory Supervisor with reasonable accommodations, including wearing orthotics in her shoes.

75.     The Defendants violated 42 U.S.C. § 12112 by rescinding the plaintiff's offer of employment based on her disability.

76.     As a result of the Defendants' conduct, the Plaintiff has been damaged.

WHEREFORE, the Plaintiff hereby demands such legal or equitable relief appropriate to effectuate the purposes of the Americans with Disabilities Act including without limitation, back pay, front pay, emotional distress, loss of benefits, attorneys' fees and other consequential damages and multiple damages.

## COUNT VI
### Failure to Hire Based on a Disability in Violation of Massachusetts Handicap Discrimination Laws, M.G.L. c. 151B, § 4(16)

77.     The Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 76 of her complaint and incorporates them herein by reference.

78.     The Plaintiff is a qualified handicapped person because CMST substantially limits her major life activities of standing, walking, and balancing.

79.     The Plaintiff is a qualified handicapped person because she is capable of performing the essential functions of a Laboratory Supervisor with reasonable accommodations including wearing orthotics in her shoes.

80.     The Defendants violated M.G.L. c. 151B § 4(16) by rescinding the plaintiff's offer of employment based on her disability.

81.     As a result of the Defendants' conduct, the Plaintiff has been damaged.

WHEREFORE, the Plaintiff hereby demands such legal or equitable relief appropriate to effectuate the purposes of the Massachusetts Handicap Discrimination Law including without limitation, back pay, front pay, emotional distress, loss of benefits, attorneys' fees and other consequential damages and multiple damages.

## COUNT VII
### Failure to Provide a Reasonable Accommodation in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*.

82.     The Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 81 of her complaint and incorporates them herein by reference.

83.     The Plaintiff is a handicapped person because CMST substantially limits her major life activities of standing, walking, and balancing.

84.     The Plaintiff is a qualified handicapped person because she is capable of performing the essential functions of a Laboratory Supervisor with reasonable accommodations, including wearing orthotics in her shoes.

85.     The Defendants learned during the Plaintiff's pre-placement physical that the Plaintiff is a handicapped person.

86.     The Defendants violated 42 U.S.C. § 12112 by not offering the Plaintiff a reasonable accommodation and by not engaging in the interactive process to determine a reasonable accommodation.

87.     As a result of the Defendants' conduct, the Plaintiff has been damaged.

WHEREFORE, the Plaintiff hereby demands such legal or equitable relief appropriate to effectuate the purposes of the Americans with Disabilities Act including without limitation, back pay, front pay, emotional distress, loss of benefits, attorneys' fees and other consequential damages and multiple damages.

## COUNT VIII
**Failure to Provide a Reasonable Accommodation in Violation of Massachusetts Handicap Discrimination Laws, M.G.L. c. 151B, § 4(16)**

88.     The Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 87 of her complaint and incorporates them herein by reference.

89.     The Plaintiff is a handicapped person because CMST substantially limits her major life activities of standing, walking, and balancing.

90.     The Plaintiff is a qualified handicapped person because she is capable of performing the essential functions of a Laboratory Supervisor with reasonable accommodations, including wearing orthotics in her shoes.

91.     The Defendants learned during the Plaintiff's pre-placement physical that she is a handicapped person.

92.     The Defendants violated M.G.L. c. 151B, § 4(16) by not offering the Plaintiff a reasonable accommodation and by not engaging in the interactive process to determine a reasonable accommodation.

93.     As a result of the Defendants' conduct, the Plaintiff has been damaged.

WHEREFORE, the Plaintiff hereby demands such legal or equitable relief appropriate to effectuate the purposes of the Massachusetts Handicap Discrimination Law including without limitation, back pay, front pay, emotional distress, loss of benefits, attorneys' fees and other consequential damages and multiple damages.

**COUNT IX**
**(Improper Medical Examination—Violation of the Massachusetts Handicap**
**Discrimination Laws (M.G.L. c. 151B, § 4(16)**

94.     The Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 93 of her complaint and incorporates them herein by reference.

95.     The offer of employment extended to Ms. Lamacchia was conditioned on her passing a medical examination and a myriad of non-medical screenings.

96.     Because she was not offered a reasonable accommodation, the medical exam was not conducted solely for the purpose of determining if the Plaintiff could perform the essential job functions with or without a reasonable accommodation in violation of M.G.L c. 151B, § 4(16).

97.     As a result of Defendants' actions, Ms. Lamacchia has suffered serious emotional and financial harm.

WHEREFORE, the Plaintiff hereby demands such legal or equitable relief appropriate to effectuate the purposes of the Massachusetts Handicap Discrimination Law and the American with Disabilities Act including without limitation, back pay, front pay, emotional distress, loss of benefits, attorneys' fees and other consequential damages and multiple damages.

THE PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

## VERIFICATION

I, Cynthia Lamacchia, do hereby verify, under the pains and penalties of perjury, that the matters set forth in this Verified Complaint are true and correct and based upon my personal knowledge, information and belief.

Sworn to under the pains and penalties of perjury this 22d day of October, 2014.

*/s/ Cynthia Lamacchia*
Cynthia Lamacchia

THE PLAINTIFF
CYNTHIA LAMACCHIA

By */s/ Patricia M. Rapinchuk*
Patricia M. Rapinchuk, Esq., BBO # 556149
   Direct Fax (413) 452-0353
   prapinchuk@robinsondonovan.com
Hunter S. Keil, Esq., BBO # 687979
   hkeil@robinsondonovan.com
   Direct Fax (413) 452-0308
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115
Phone (413) 732-2301

579201